CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

APR 11 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| HEARTLAND, INC., <br><br> TIMOTHY D. ROBINSON, <br> *Plaintiffs*, <br><br> v. <br><br> UNITES STATES POSTAL SERVICE, <br> *Defendant*. | CIVIL NO. 3:08CV00021 <br><br> MEMORANDUM OPINION AND ORDER <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiffs' Complaint for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction (docket #1). For the following reasons, I will deny Plaintiffs' request for a temporary restraining order ("TRO").

The facts, as stated by Plaintiffs, are as follows: Plaintiffs lease to Defendant a building in Leon, Virginia that Defendant uses as a post office. On January 30, 2008, Defendant sent Plaintiffs a letter giving ninety-days' notice that Defendant was terminating the lease effective April 30, 2008. On February 27, 2008, Plaintiffs' counsel responded by letter, stating that the lease agreement does not give Defendant the right to terminate the lease unilaterally and that Defendant was therefore in breach. On March 11, 2008, Defendant sent a letter to the customers of the Leon Post Office informing them that "[t]he lease of the Leon Post Office is being terminated due to the lessor notifying us that the does not intend to comply with the terms of the lease. Therefore, it will be necessary to suspend services at the Leon Post Office at the close of business on April 11, 2008." (Compl., Ex. E.)

Yesterday, April 10, 2008, the day before services at the Leon Post Office are scheduled to be suspended, Plaintiffs filed their Complaint, which seeks, among other things, "a ten-day

[TRO] enjoining the Defendant from closing its operations at the Leon Post Office." (Compl. 3.) At Plaintiffs' request, an ex parte telephonic hearing on their request for a TRO was held yesterday afternoon without notice to Defendant. It is now only hours before services at the Leon Post Office are scheduled to be suspended.

"Ex parte [TROs] are no doubt necessary in certain circumstances." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 439 (1974). However, "[t]he stringent restrictions imposed . . . by Rule 65, on the availability of ex parte [TROs] reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Id.* at 438–39. The "stringent restrictions" of Rule 65 include two procedural requirements that a movant must satisfy before a court may issue a TRO. First, the movant must set forth "specific facts in an affidavit or a verified complaint [that] clearly show the immediate and irreparable injury . . . [that] will result to the movant before the adverse party can be heard." Fed. R. Civ. P. 65(b)(1)(A). Second, "the movant's attorney [must] certify in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

As I explained at the hearing, Plaintiffs had, at that time, satisfied neither of these prerequisites. I therefore gave them until 10:00 this morning to file additional papers that might remedy the procedural deficiency. In response, Plaintiffs have filed the affidavit of their attorney, which is captioned "Affidavit Regarding Plaintiffs' Complaint for Temporary Restraining Order, Pursuant to Rule 65(b)(2)." In addition to incorrectly citing Rule 65(b)(2) instead of Rule 65(b)(1), Plaintiffs' affidavit fails to comply with the substance of the Rule 65(b)(1) requirements. Although the affidavit does describe Plaintiffs' efforts to give notice,

nearly all of which occurred *after* the hearing, it fails to offer any reason why notice should not be required. *See* Fed. R. Civ. P. 65(b)(1)(B). Indeed, I seriously question whether Plaintiffs could offer any sufficient reason, given that the urgency of their request for injunctive relief is due entirely to their decision to file their Complaint the day before the suspension of services at the Leon Post Office; this, despite their having known of the suspension for weeks prior and of the lease termination for months prior. Furthermore, Plaintiffs' affidavit also fails to set forth specific facts showing any irreparable injury that would occur before Defendant could be heard in opposition to Plaintiffs' request for a TRO. *See* Fed. R. Civ. P. 65(b)(1)(A). The requirements of Rule 65(b)(1) are not merely technical niceties that a court may easily disregard, but rather crucial safeguards of due process. *See Austin v. Altman*, 332 F.2d 273, 275 (2d Cir. 1964). Accordingly, Plaintiffs' failure to comply with the requirements of Rule 65(b)(1) is reason alone to deny their request for a TRO.

Even on the merits, however, I would deny Plaintiffs' request because they have failed to show a likelihood of irreparable injury. *See Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir. 1977). I discern no reason why Defendant's alleged breach of the lease agreement, which is the basis of the Complaint's claim for a TRO, cannot and should not be remedied by money damages because it appears that all Plaintiffs are entitled to under the terms of the agreement is a fixed amount of monthly rent. Plaintiffs' argument with regard to irreparable injury focuses on harms to the surrounding community that will allegedly occur if the Leon Post Office closes, but I see nothing in the lease agreement that requires Defendant to operate a post office in Plaintiffs' building if the first place. (*See* Compl., Ex. A.) To the extent that closing the post office might cause irreparable injury to the community at large, it is entirely unclear how this is an injury to Plaintiffs in their capacity as lessors.

- 3 -
Case 3:08-cv-00021-NKM   Document 6   Filed 04/11/08   Page 3 of 5   Pageid#: 48

There are also serious questions of jurisdiction. According to its terms, "all disputes arising under or relating to" the lease agreement are subject to the Contract Disputes Act (CDA) of 1978, 41 U.S.C. §§ 601–613. (Compl., Ex. A at § A.13.) The CDA establishes administrative procedures for the resolution of disputes regarding government contracts, with the only judicial intervention occurring through the appeal of an adverse administrative decision to the U.S. Court of Appeals for the Federal Circuit. *See id.* §§ 607, 609. Thus, it does not appear that Plaintiffs have exhausted their administrative remedies. *See Macauley v. Waterman S.S. Corp.*, 327 U.S. 540, 545 (1946) (describing "the rule requiring exhaustion of administrative remedies").

The same is true of the basis for relief asserted in Plaintiffs' memorandum in support of their request for a TRO. Unlike their Complaint, Plaintiffs' memorandum focuses not on Defendant's alleged breach of the lease agreement but on Defendant's alleged violations of 39 U.S.C. § 404(d)[1] and 39 C.F.R. § 241.3, which establish procedures that Defendant must following in closing a post office. When questioned at the hearing, Plaintiffs asserted that they have standing to seek redress of these alleged violations in their capacity as members of the community served by the post office. Setting aside the fact that Plaintiffs allege none of this in their Complaint, they also fail to cite any provision of law that creates a private right of action for violations of § 404(d) or § 241.3. Moreover, it is entirely unclear whether § 404(d) and § 241.3 are even applicable to the instant circumstances. These provisions apply only to the "closing or consolidation" of a post office, but Defendant's letter to its customers take pains to emphasize that its decision to "suspend services" is "tentative" and is not a "final decision to permanently discontinue the Post Office."[2] (Compl., Ex. E.) If the suspension of services does

---

[1] Plaintiffs' citations refer to 39 U.S.C. § 404(b), which authorizes Defendant to set the rates of postage and fees for postal services. I will assume that Plaintiffs intended to cite § 404(d), which would seem to be more applicable.
[2] In its January 30th letter to Plaintiffs, however, Defendant does state that "the NOVA District Office has decided to close its Post Office at Leon, VA." (Compl., Ex. C.) One could argue that Defendant's subsequent letter

- 4 -

not constitute a "closing" of the post office, then there has been no statutory violation. If, however, Defendant's scheduled suspension of services does constitute a decision to "close" the post office, it is likely that this Court lacks jurisdiction because § 404(d) provides administrative procedures for appealing such a decision that Plaintiffs have not exhausted. *See* § 404(d)(5).

In sum, even if Plaintiffs' request for a TRO were not procedurally defective, they have also failed to satisfy their burden on the merits. Accordingly, Plaintiffs' request for a TRO is hereby DENIED. After providing proper notice to Defendant as required by Rule 65(a), Plaintiffs may proceed on their claims for preliminary and permanent injunctions, bearing in mind that they will have to make a greater showing than they thus far have if they are to succeed.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and Order to all counsel of record.

Entered this 11th day of April, 2008.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

to its customers is a carefully drafted effort to effectively close the Leon Post Office without legally closing it, thereby avoiding such prerequisites as 60-days' notice to customers, § 404(d)(1), and publicized findings on the factors that Defendant is statutorily required to consider before making a decision to close, § 404(d)(2)–(3). However, whether Defendant may properly circumvent the statutory and regulatory procedures in this manner is not a question Plaintiffs have addressed, nor need it be decided at this stage of the proceedings.